UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DWIGHT WILSON,

    Plaintiff,

v.                                          Case No. 8:19-cv-01868-T-60SPF

CITY OF ST. PETERSBURG,
CLAUDE TANKERSLEY, and
GARY CORNWELL,

    Defendants.
_____/

## ORDER DENYING "DEFENDANTS' DESPOSITIVE MOTION TO DISMISS THIRD AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW"

This matter is before the Court on "Defendants' Dispositive Motion to Dismiss Third Amended Complaint and Incorporated Memorandum of Law," filed by counsel on October 24, 2019. (Doc. # 21). On November 11, 2019, Plaintiff Dwight Wilson, through counsel, filed a response in opposition to the motion. (Doc. # 23). After reviewing the motion, response, court file, and the record, the Court finds as follows:

# FACTUAL BACKGROUND[1]

According to Plaintiff, several allegedly discriminatory incidents occurred over the nine years Plaintiff, an African-American, was employed with the City of St. Petersburg ("the City"). Plaintiff's employment began on January 2, 2007, when he was hired by Patti Anderson, Director of Water Resources, to serve as Assistant Director of the Water Resources Department. Anderson retired in 2008, and Plaintiff became the first African-American Interim Director of Water Resources. When the City selected George Cassady, a white male, to replace Anderson as the Director, Plaintiff returned to his role as Assistant Director.

Cassady resigned in 2012, and Plaintiff again filled the role of Interim Director. At that time, Plaintiff was told by another city employee that he was the "black version of his predecessor." While acting as Interim Director, Plaintiff applied for the permanent position of Director. However, the City promoted another employee, Assistant Director Steve Leavitt, a white male, to fill the position. Leavitt did not have significant experience with the scope and function of much of the Water Resources Department. Plaintiff worked under Leavitt until the City terminated him in 2016. On at least one occasion, Plaintiff reported to Leavitt and to Human Resources that certain white subordinates were openly dismissive of his

---

[1] The Court accepts as true the facts alleged in Plaintiff's third amended complaint for purposes of ruling on the pending motion to dismiss. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."). The Court is not required to accept as true any legal conclusions couched as factual allegations. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986).

efforts to manage them and should be counseled on this behavior, and neither Leavitt nor HR did anything to address the problem.[2]

In August 2015, Michael Connors, Public Works Administrator, chose Plaintiff to be the next Director of Water Resources. However, when Connors informed Defendant Gary Cornwell of his decision, Cornwell told Connors he would not allow Plaintiff to become the Director. Connors then selected a less qualified individual, John Norris, a white male, to be the Director of Storm Water.[3]

In September 2015, Leavitt told Plaintiff that he planned to retire from his position as Director in the near future. Later that month, Plaintiff spoke with Cornwell in HR about filling the position; however, Cornwell was not receptive to Plaintiff ever becoming Director.

In January 2016, Defendant Claude Tankersly replaced Connors as the Public Works Administrator. Then, Cornwell instructed Tankersly to take steps to eliminate Plaintiff from his position as Assistant Director by reorganizing the department. Tankersly directed Leavitt to prepare a new organization chart for the Department. Leavitt initially kept Plaintiff in the position of Assistant Director, as he originally intended to retain Plaintiff.

In April 2016, Cornwell informed Plaintiff he would not be considered to replace Leavitt, despite the fact that he was fully qualified and that he worked as

---

[2] Plaintiff further alleges that when he counseled or issued directives to subordinate white employees, the City's upper management overturned Plaintiff's decisions and sided with the white subordinates.
[3] Director of Storm Water appears to be a different position from Director of Water Resources. However, it is unclear where the Director of Storm Water position falls in the City's organizational structure.

the Assistant Director for over nine years. On April 7, 2016, Tankersly instructed Leavitt to remove Plaintiff from his position as Assistant Director and to make sure Plaintiff was not included in the reorganization. At this time, Leavitt told Tankersly it would be too risky to fire Plaintiff because he was the only African-American in the department. Tankersly responded that Plaintiff could be eliminated for any reason. On April 11, 2016, Leavitt informed Plaintiff that he was eliminating his position and terminating him effective September 30, 2016. Leavitt told Plaintiff that two other specific positions were also selected for elimination. However, these positions were never eliminated and the respective individuals retained their jobs. Additionally, the restructuring did not actually eliminate Plaintiff's Assistant Director position, but rather split it into two different positions – "Senior Waste Water Manager" and "Senior Water Manager." In September 2016, the City promoted John Palenchar, a white male, to replace Leavitt as Interim Director. According to Plaintiff, Palenchar is less qualified and experienced than Plaintiff for this position. Palenchar became the full time Director at the end of 2017.

## PROCEDURAL BACKGROUND

Plaintiff filed his original complaint in state court on June 12, 2018. (Doc. # 1). He filed an amended complaint on August 14, 2018, and a second amended complaint on July 29, 2019. (Doc. ## 1, 1-1). Defendants removed the action on July 31, 2019. (Doc. # 1). Defendants then filed a motion to dismiss, directed at Counts I, III, and IV of the second amended complaint, on August 8, 2019. (Doc. # 11). On October 10, 2019, with approval from the Court, Plaintiff filed his third amended

complaint. (Doc. ## 18, 19). Defendants subsequently moved to dismiss Count V – "Section 1983: Discrimination Based on Race in Violation of 42 U.S.C. § 1981." (Doc. # 21). On November 11, 2019, Plaintiff filed a response opposing the motion. (Doc. # 23).

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). "Although Rule 8(a) does not require 'detailed factual allegations,' it does require 'more than labels and conclusions'; a 'formulaic recitation of the cause of action will not do.'" *Young v. Lexington Ins. Co.*, No. 18-62468, 2018 WL 7572240, at *1 (S.D. Fla. Dec. 6, 2018), *report and recommendation adopted*, No. 18-62468-CIV, 2019 WL 1112274 (S.D. Fla. Jan. 9, 2019) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)). In order to survive a motion to dismiss, factual allegations must be sufficient "to state a claim for relief that is plausible on its face." *Twombly,* 550 U.S. at 555. A claim is facially plausible when the pleaded facts "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When deciding a Rule 12(b)(6) motion, review is generally limited to the four corners of the complaint. *Rickman v. Precisionaire, Inc.*, 902 F. Supp. 232, 233 (M.D. Fla. 1995). Furthermore, when reviewing a complaint for facial sufficiency, a court "must accept [a] [p]laintiff's well pleaded facts as true, and construe the [c]omplaint in the light most favorable to the [p]laintiff." *Id*. (citing *Scheuer v.*

*Rhodes*, 416 U.S. 232, 236 (1974)). The Court is not required to accept legal conclusions stated as factual allegations as true. *Iqbal*, 556 U.S. at 678.

## ANALYSIS

In their motion, Defendants argue that Count V should be dismissed because Plaintiff has failed to allege a policy or custom of the municipality that led to the asserted violations. *See Monell v. New York City Dept of Social Servs.*, 436 U.S. 658, 690 (1978) (finding "[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief . . . pursuant to a governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels"). "It is well established that a municipality may be held liable under § 1983 only when the deprivation at issue was undertaken pursuant to city 'custom' or 'policy,' and not simply on the basis of *respondeat superior*." *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1479 (11th Cir. 1991) (citing *St. Louis v. Praprotnik*, 485 U.S. 112, 125 n. 2 (1988)). However, city policy is not limited to decisions made by the city's official legislative body or in written agreements; it may also be implicated by the acts of individual policymaking officials or by pervasive city custom. *Id.* at 1480. To sustain a cause of action, a plaintiff must adequately plead facts in his complaint that would permit a city to be held responsible for the plaintiff's employment termination under either the policymaker or custom approaches to municipal liability. *Id.* at 1480.

Under the policymaker approach, a city can be held liable for actions taken by an official who "possesses final authority to establish municipal policy with

respect to the action ordered." *Id.* (citing *Pembaur v. Cincinnati*, 475 U.S. 469, 481 (1986)). The Eleventh Circuit has interpreted *Pembaur* to mean that "a municipal official who has 'final policymaking authority' in a certain area of the city's business may by his or her action subject the government to § 1983 liability when the challenged action falls within that authority." *Brown*, 923 F.2d at 1480 (finding the district court prematurely dismissed claims against the city when the plaintiff alleged sufficient facts to withstand the city's motion to dismiss).

Under the custom approach, a municipality can be held liable if a plaintiff can establish a widespread practice that, "although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Id.* at 1481 (citing *Praprotnik*, 485 U.S. at 127 (internal quotation marks omitted)). "A longstanding and widespread practice [of discrimination] is deemed authorized by policymaking officials because they must have known about it but failed to stop it." *Id.* (finding plaintiff's repeated allegations that his experiences were the result of discriminatory practices accepted by the police department were sufficient to state a claim).

Upon review, the Court finds that Plaintiff's allegations are sufficient to withstand a motion to dismiss. Here, like in *Brown*, Plaintiff alleged that the City has engaged in a persistent practice of racial discrimination in the workplace. *See id.* at 1482. Plaintiff has alleged that the City instituted and followed practices, customs, and policies which resulted in a violation of Plaintiff's constitutional rights, and that the City has a systemic and widespread practice of racial

discrimination. Additionally, Plaintiff alleges that in failing to discipline its employees, the City has ratified the decisions and reasons for the decisions, constituting a practice, custom, or policy. Finally, he alleges that Tankersly and Cornwell both acted as final policymakers for the City, whose decisions were not immediately or effectively reviewable.

In support of the above claims, Plaintiff details incidents that allegedly occurred throughout his nine years of employment with the City, including his (1) failure to receive a promotion to Director multiple times due to his race, (2) failure to receive pay equal to white individuals holding the same position of Interim Director, and (3) termination based on his race. Although the incidents described in the complaint only involve one victim, the Eleventh Circuit has held that allegations made by one plaintiff against his employer – detailing several events that are personal to him – may withstand a motion to dismiss. *Brown*, 923 F.2d at 1482 (finding plaintiff's allegations of a persistent practice of racial discrimination in evaluating his work performance sufficient to support claims of longstanding custom or practice that has attained the "force of law"). Plaintiff, like the plaintiff in *Brown*, alleges facts that would permit the city to be held responsible for adverse employment actions under either the policy maker or custom approaches to municipal liability. *See id.* at 1480.; *cf. Underwood v. City of Fort Myers*, 836 F.Supp. 823 (M.D. Fla. Oct. 18, 1993) (dismissing employment discrimination case because plaintiff failed to allege that defendant engaged in conduct causing the deprivation of rights at issue by adhering to any policy, that defendant acquiesced

in a longstanding practice or custom which constitutes "standard operating procedure," that the violative discriminatory conduct occurred as a result of a custom or policy of the defendant, or that the defendant has officially sanctioned or ordered the alleged discriminatory conduct of the persons responsible).

Accordingly, the Court finds that the allegations of the third amended complaint sufficiently allege a constitutional violation that would support a § 1983 claim. Consequently, Defendants' motion is denied.

It is therefore

**ORDERED**, **ADJUDGED**, and **DECREED**:

1. "Defendants' Dispositive Motion to Dismiss Third Amended Complaint and Incorporated Memorandum of Law" (Doc. # 21) is hereby **DENIED**.
2. Defendants are directed to file an answer on or before January 10, 2020.[4]

**DONE** and **ORDERED** in Chambers, in Tampa, Florida this 19th day of December, 2019.

 

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**

---

[4] Although Defendants filed an answer (Doc. # 22) to Counts I-IV on October 24, 2019, Defendants are directed to file an answer to all counts, in the interest of judicial economy.